[No. 2016]

## J. E. McKINNON, Superintendent of the State Orphans' Home, JOHN E. BRAY, WILLIAM McMILLAN, and C. L. DEADY, as the Board of Orphans' Home Commissioners, Petitioners, v. THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA IN AND FOR WASHOE COUNTY, and THE HON. COLE L. HARWOOD, Judge Thereof, Respondents.

1. "Orphans' Home" — "Reformatory" — "Dependent and Neglected Children."

   Under the act of 1873 (Stats. 1873, c. 45), as amended by Stats. 1903, c. 41 (Rev. Laws, 4099) relative to the State Orphans' Home, providing that any district judge upon a showing that an orphan is the child of parents one or both of whom were at the time of their decease residents of the state, and that the condition of the orphan is such that it would be for his best interest to be admitted to such home, may commit the orphan to the home at the expense of the county, and that the directors at their discretion may receive any child from a living resident parent or guardian and require such parent or guardian to contribute to its support, but that no child shall be so received unless sent by the county commissioners of the county in which the child resides, who shall agree to pay for its maintenance, and juvenile court law March 24, 1909 (Stats. 1909, c. 180, sec. 7), as amended by Stats. 1911, c. 197 (Rev. Laws, 734), providing for the commission of dependent and neglected children to any suitable state institution organized for the care of dependent or neglected children, and section 1, under which "dependent and neglected children" include those having immoral, evil, or incorrigible tendencies, the court could not commit to the State Orphans' Home a dependent or neglected child who was not an orphan, since an "orphans' home" is an institution or home for the care of destitute orphans, and not a "reformatory" or institution in which young offenders are confined and instructed, with a view to their reformation.

2. Contempt—Prohibition.

   Alleged violation of a void order of court does not constitute contempt of court, and prohibition will lie to prevent proceeding to punish for such alleged contempt.

Original proceeding in prohibition by J. E. McKinnon, Superintendent of State Orphans' Home, John E. Bray, William McMillan, and C. L. Deady, as the Board of Orphans' Home Commissioners, directed to the Second Judicial District Court of the State of Nevada in and

for Washoe County, and Hon. Cole L. Harwood, Judge thereof, to prohibit the latter from further proceedings in contempt. **Writ granted.**

The facts sufficiently appear in the opinion.

*Geo. B. Thatcher*, Attorney-General, for Petitioners.

*L. A. Gibbons*, for Respondents.

By the Court, Talbot, C. J. :

The petitioner McKinnon is the superintendent of the State Orphans' Home, and petitioners Bray, superintendent of public instruction, C. L. Deady, surveyor-general, and William McMillan, state treasurer, constitute the board of directors of that institution. This is an application by them for a writ to prohibit the Second judicial district court and Hon. Cole L. Harwood, the judge thereof, from punishing them for contempt for refusing to receive at the orphans' home a child which was by that court ordered committed to that institution under the act relating to dependent, neglected, or delinquent children, and designated as the "Juvenile Court Law." The order was made in a proceeding entitled *The State of Nevada in the interest of Howard Eggendorfer, a Dependent Child, Plaintiff,* v. *Carrie Eggendorfer, His Mother, Defendant,* to which the petitioners were not made parties. The order also recites: "The above-named Howard Eggendorfer having been regularly brought before the above-entitled court upon a petition duly verified and filed, as provided in the statute of the State of Nevada, said petition showing that said Howard Eggendorfer was within the said county of Washoe, and is a dependent child within the meaning of said statute, and due notice of the hearing of said petition having been given, and Carrie Eggendorfer, the mother of said child, and the only parent thereof, appearing and being present in the above-entitled court upon the hearing thereof, and it appearing to the satisfaction of the court that the said Howard Eggendorfer is under the age of 18 years, and

is of the age of 13 years, and within the said county of Washoe, and is a dependent child within the meaning of said statute, and that his mother is unable to properly take care of, train, educate, and maintain said dependent child, and it further appearing that it is for the best interests of said child and other people of this state that said child be taken from the custody of his mother, and that he be committed to the care of the State Orphans' Home at Carson City, Nevada, the same being a suitable state institution for the care of dependent and neglected children: Now, therefore, it is hereby ordered, adjudged and decreed that the said Howard Eggendorfer is a dependent child within the meaning of the statute of this state, and that he be and hereby is committed to the care of said State Orphans' Home at Carson City, Nevada, for the period of his minority, or until the further order of this court, and that the superintendent of said institution, J. E. McKinnon, is hereby appointed guardian of said dependent child, Howard Eggendorfer, during the time he is kept under this order in said institution, and that the expense of his keep and care shall be borne by and paid by the State of Nevada at a monthly cost of not to exceed $10, and that said J. E. McKinnon, as guardian, shall place said child in said State Orphans' Home and hold said child, care for, train, and educate him subject to all the rules and laws in force governing said State Orphans' Home, and said J. E. McKinnon and said State Orphans' Home are hereby directed and authorized to receive and care for said dependent child, Howard Eggendorfer."

In the petition filed in this court it is alleged that the order of the district court was made without the consent and without consultation with or notice to any of the petitioners, and that the petitioner, McKinnon, the superintendent of the State Orphans' Home, was appointed the guardian of the child without his consent or notice to him; that no order of the board of county commissioners of Washoe County was ever made committing Howard Eggendorfer to the State Orphans' Home; that the petitioners "Bray, Deady, and McMillan, acting as the board

of directors of the State Orphans' Home, in the exercise of their discretion imposed on them by statute, and acting upon the advice and report of its examining physician that said Howard Eggendorfer, by reason of his diseased condition and unclean habits, was an unfit person to be received into the said home, refused to admit into or accept such Howard Eggendorfer as an inmate therein."

Thereafter, upon affidavit, the Second judicial district court cited the petitioners to show cause why they should not be punished for contempt of court in refusing to obey the order committing the child to the State Orphans' Home. The petitioners applied to the district court to set aside the order that citation issue and the citation and order to show cause why the petitioners should not be punished for contempt, and also moved to set aside the original order committing Howard Eggendorfer to the State Orphans' Home and appointing J. E. McKinnon, as superintendent, guardian of the child.

It is alleged that the district court refuses to set aside these orders, and threatens to, and will, unless prohibited by this court, punish the petitioners for contempt in refusing to obey the orders of the district court, notwithstanding that these orders and citation are wholly void and in violation of law, and without authority or jurisdiction of the district court, and in usurpation of the rights, powers and duties of the petitioners as the board of directors of the State Orphans' Home. Provision was made for a State Orphans' Home by the acts of March 3, 1869 (Stats. 1869, c. 62), and March 1, 1873 (Stats. 1873, c. 45; Rev. Laws, 4087–4103). The act of 1873 provides that the administration of the State Orphans' Home shall be under the control of three directors, to consist of the superintendent of public instruction, surveyor-general, and state treasurer, and that they shall have power to manage and administer the affairs of the home.

It also provides that all orphans duly admitted to the State Orphans' Home become the wards of the state and are entitled to the care, protection, and guardianship of the state, which for the care, protection and guardianship of such wards is entitled to their services, and has

the right to train and educate them for useful places in society, and that such rights of the state are superior to the claims of relations or persons, resident or nonresident.

It is also provided that upon the application in writing of any citizen of the state to the district judge of any county in behalf of any whole orphan, showing such orphan to be the child of parents, one or both of whom at the time of decease were residents of the state, and that the condition of the orphan is such that it would be for his or her best interest to be admitted to the State Orphans' Home, the district court may after notice take testimony and order the orphan committed to the home, the expenses of the proceedings and the transportation of the orphan to the home to be a county charge.

It is also provided by section 11 of said act that "whenever said board shall deem it for the best interests of any orphan in said home, or of the state, they may discharge any orphan therein," and apprentice any orphan in the home to the head of any family or person carrying on a useful or proper business.

Sections 12 and 13 of the act of 1873, as amended in 1903 (Stats. 1903, c. 41, secs. 1, 2; Rev. Laws, 4098, 4099) are as follows:

"Sec. 12. Nothing in this act shall be construed to prevent the board of directors, at their discretion, from receiving any child from its living resident parent, parents, guardian or guardians, upon a proper showing to their satisfaction of the inability of such parent, parents, guardian or guardians, to support and care for such child; and that such board may require the living parent, parents, guardian or guardians of such child so admitted, to contribute such sum to its support as said board may determine.

"Sec. 13. Children admitted to the State Orphans' Home under the provisions of section 12 of this act, as amended, are hereby adjudged and declared to be wards of the state as fully as whole orphans, subject only to such conditions of admission as may be fixed by the board of directors; provided, that no child shall be

received by the board of directors of said orphans' home unless they be sent by the county commissioners of the county in which the children reside; *and further provided,* that the county from which the child is sent shall agree by its county commissioners to pay for the maintenance of said child at a reasonable rate, said rate to be fixed by the board of directors of said orphans' home."

The forepart of section 1 of the act of March 24, 1909, (Stats. 1909, c. 180; Rev. Laws, 728) relating to dependent, neglected, or delinquent children, is as follows: "This act shall be known as the 'Juvenile Court Law' and shall apply only to children under the age of eighteen years not now or hereafter inmates of a state institution, except as otherwise herein provided. For the purpose of this act the words 'dependent child' and 'neglected child' shall mean any child who, while under the age of eighteen years, for any reason is destitute, homeless or abandoned; or dependent upon the public for support; or has not proper parental care or guardianship; or habitually begs or receives alms; or is found living in any house of ill-fame, or with any vicious or disreputable person, or has a home which by reason of neglect, cruelty or depravity on the part of its parents, guardian or any other person in whose care it may be, is an unfit place for such child, or who, while under the age of ten years, is found begging, peddling or selling any article or articles, or singing or playing any musical instrument for gain or giving any public entertainments upon the street, or accompanies or is used in the aid of any person so doing; or is incorrigible, or knowingly associates with thieves, vicious or immoral persons; or without just cause, and without the consent of the parents, guardian or custodian, absents itself from its home or place of abode, or is growing up in idleness or crime; or knowingly frequents or visits a house of ill-fame or ill-repute; or knowingly frequents or visits any policy shop or place where any gaming device is operated; or patronizes, visits or frequents any saloon or dram shop where intoxicating liquors are sold;

or patronizes any public poolroom where the game of billiards or pool is being carried on for pay or hire; or who wanders about the streets in the nighttime without being on any lawful business or any lawful occupation; or habitually wanders about any railroad yards or tracks, or jumps or attempts to jump onto any moving train; or enters any car or engine without lawful authority, or writes or uses vile, obscene, profane or indecent language, or smokes cigarettes in any public place or about any schoolhouse; or is guilty of indecent, immoral or lascivious conduct; any child committing any of these acts shall be deemed a delinquent child, and when proceeded against, such proceedings shall be on behalf of the state in the interest of the child and the state, with due regard for the rights and duties of parents and others, by petition to be filed by any reputable person, and to that end it shall be dealt with, protected and cared for in the district court as a ward of the state in the manner hereinafter provided. The words 'delinquent person' shall include any person under the age of eighteen years who violates any law of this state or any ordinances of any town, city, county, or city and county of this state, defining crime."

Section 2 (Rev. Laws, 729) confers jurisdiction upon the district courts in all cases coming within the terms of the act. In the latter part of section 7 (Rev. Laws, 734) the following provision appears: "And if parent, parents, guardian or custodian consent thereto, or if the court shall further find that the parent, parents, guardian or custodian of such child are unfit or improper guardians or are unable or unwilling to care for, protect, train, educate, correct or discipline such child and that it is for the interest of such child and other people of this state that such child be taken from the custody of its parents, custodian or guardian, the court may make an order appointing as guardian of the person of such child, some reputable citizen of good moral character, and order such guardian to place such child in some suitable family, home or other suitable place which such guardian may provide for such child, or the court may enter an order committing such child to some suitable state institution,

of this or any other state organized for the care of dependent or neglected children, or to some training or industrial school or children's home-finding society of this or any other state, or to some association embracing in its objects the purpose of caring for or obtaining homes for neglected or dependent children, which association shall have been accredited as heretofore provided. As amended, Stats. 1911, 387."

The real question to be determined is whether the juvenile court law enacted in 1909 authorizes the commitment of dependent or neglected children to the State Orphans' Home established by an act of the legislature approved forty years ago. The orphans' home act contains humane provisions for the care, education, protection, guardianship, and admission to the home of orphans. As amended in 1903, sections 12 and 13, above quoted, provide that the board of directors at their discretion may receive any child from its living resident parent, parents, or guardian, upon the proper showing to their satisfaction of the inability of such parent, parents or guardian to support and care for such child, and that the board may require the living parent, parents, or guardian to contribute to its support, provided that no child shall be received by the board of directors of the orphans' home, unless sent by the county commissioners of the county in which the child resides, and provided that the county commissioners shall agree to pay for the maintenance of the child at a reasonable rate, to be fixed by the board.

It is apparent that this act makes provision for the care only of orphans and, at the discretion of the board, of children whose parents are unable to support or care for them, and that the latter class of children can be admitted only at the discretion of the board, upon an order of the county commissioners, and payment by the parent or county of a reasonable price for maintenance, to be fixed by the board.

It is contended that the provision in section 7 of the juvenile court law that "the court may enter an order committing such child to some suitable state institution,

of this or any other state organized for the care of dependent or neglected children" authorizes the court to commit dependent or neglected children to the orphans' home.    Is the orphans' home a state institution organized for the care of dependent and neglected children? Under the definition and language in section 1 of the juvenile court law, hereinbefore quoted, dependent children and neglected children include ones of immoral, vicious, or incorrigible tendencies, and the act further relates to "delinquent" or criminal children.    It does not mention the orphans' home, nor as a class does it refer to orphans or to children having parents who are unable to give them support.

If respondent is correct in the contention that the district court is authorized to commit dependent and neglected children to the orphans' home, the children of the various counties of the state having immoral, evil, and incorrigible tendencies, included under the definition of dependent child and neglected child, may be committed to the orphans' home and maintained there at the expense of the state, notwithstanding the protest of the board of directors of that institution, to associate with and influence for bad the most innocent and worthy children there, with the result that the home would be converted into a reform school for the children of evil tendencies, to the detriment of the orphans free from vicious inclinations, and for whom the home was established.    We do not believe that the legislature intended such results without saying so.    We are of the opinion that the orphans' home was wisely and charitably provided only for such children as are so unfortunate as to be without parents and need to be maintained at the expense of the state, and at the discretion of the board of directors for children whose parents are unable to give them support and proper care, if the expense of their maintenance at the home is paid for by the parent or county; and that, notwithstanding the juvenile court law, the home is not intended for nonorphan, dependent and neglected children, which under the statute includes children of vicious tendencies.    "Orphans' Home" has

a well-known meaning, different from a reformatory. Leading dictionaries contain the following definitions: "Orphanage—An institution or asylum for the care of orphans." "Reformatory—A penal institution to which young offenders are committed." (Webster.) "Orphanage—An institution for the care of destitute orphans." "Reformatory—An institution in which offenders are confined and instructed with a view to their reformation rather than mere punishment." (Standard.) "Orphanage—An institution or home for orphans." "Reformatory—An institution for the reception and reformation of youths who have already begun a career of vice or crime." (Century.)

As the order of the district court committing Howard Eggendorfer to the orphans' home as a delinquent and neglected child is unauthorized by law, the writ of prohibition against the district court and the judge thereof will issue as demanded.