## No. 12,746.

CRAIG *v.* PEOPLE EX REL. HAZZARD ET AL.

(299 Pac. 1064)

Decided May 25, 1931.

Mr. JOHN S. UNDERWOOD, Attorney General, Mr. CLARENCE L. IRELAND, Attorney General, Mr. ARTHUR OLSON, Assistant, Mr. A. L. BEARDSLEY, Assistant, for plaintiff in error.

140

Mr. Lewis D. Mowry, for defendants in error.

Mr. Emory L. O'Connell, amicus curiae.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

The people of the state of Colorado on the relation of the directors of Union High School District No. 3 of Adams county brought suit in mandamus against Katherine L. Craig, superintendent of public instruction of the state of Colorado seeking to require her to apportion the public school income fund upon the basis of the school population in Adams county without deduction for pupils attending high school in Jefferson county and the City and County of Denver. The district court ordered the alternative writ made permanent, a review of which action is here sought.

The alternative writ issued pursuant to said petition recites that it is the duty of the state superintendent of public instruction to apportion all moneys in the state treasury therein held to the credit of the public school income fund, among the several counties of the state in proportion to the school population of each county for the next year preceding such apportionment and shall certify said apportionment to the state auditor, and said superintendent shall also certify to the superintendent of schools of each county the amount apportioned to such county; that included in the school population of the county of Adams are 36 pupils (names given), all of whom reside in Union High School District No. 3 in Adams county, and the names of said persons are included in the report of said Adams county for the year 1929 made to and received by this respondent, the said report being for the year next preceding the apportionment for the year 1930; that because and by reason of the facts aforesaid and by virtue of the laws of Colorado in such

case made and provided the state superintendent of public instruction should, in apportioning the public school income fund, take into consideration all of the school population of Adams county as shown in the report aforesaid and should certify said apportionment to the state auditor, in order that the said auditor may and shall draw his warrant on the state treasurer in favor of the county treasurer of Adams county for the amount due said county, including therein the amount to which the inclusion of the aforesaid names entitles said Adams county, all of which must be done for the purpose and in order that said moneys shall and may be apportioned among the several school districts of Adams county, to the end that said Union High School District No. 3 may receive the amount legally due said district for the maintenance of its Union High School based upon an apportionment which shall include the pupils above named; that 19 named pupils are attending Arvada High School in Jefferson county, 11 named pupils are attending Wheatridge High School in Jefferson county and 6 other named pupils are attending North Denver High School in the City and County of Denver, under the pretense and pretext that it is impossible and impracticable to attend Union High School District No. 3, and that said schools are more accessible than the Union High School in District No. 3, Adams county, in which they reside, and that by reason thereof said respondent has deducted and withheld and intends to deduct and withhold from the amount due Adams county from the public school income fund for Union High School District No. 3, the sum of $2,000 to pay the tuition fees required by the districts of said students' attendance, and to pay the same to Jefferson county and the City and County of Denver, notwithstanding the fact that said schools in Jefferson county and the City and County of Denver are not more accessible nor more practicable than the said Union High School in District No. 3 of Adams county, and that attendance at said school is not impossible and not impracticable; that de-

mand has been made upon said respondent to apportion the public school income fund to Adams county based upon the population including aforesaid pupils, but said respondent has refused said demand and has stated that she will not so apportion said funds, to the end that Union High School District No. 3 is and shall be deprived of said money, contrary to the statute and in violation of respondent's lawful duty in the premises.

Respondent's return and answer admits all of the allegations in the alternative writ except she denies, "that said schools in Jefferson County and the City and County of Denver are not more accessible nor more practicable than the said Union High School in District No. 3 of Adams County, and that attendance at said school is not impossible and not impracticable."

The relators demurred to respondent's return and answer for the reason that it fails to state facts sufficient to constitute an answer to the alternative writ, claiming chapter 159 of the Session Laws of 1929 is unconstitutional.

The court in sustaining this demurrer held the aforesaid act to be unconstitutional and the respondent, electing to stand upon her return and answer, the court thereupon entered judgment making the alternative writ permanent and directing respondent to apportion the public school income funds as prayed for.

Relators urge that chapter 159, Session Laws of 1929, is unconstitutional because it violates sections 4 and 15 of article 9 of the Constitution. This act provides:

"Section 1. Whenever it is impossible or impracticable for a qualified high school pupil to attend a high school in his own district, he may attend the high school in another and more accessible district in a county other than the county of his residence, with the consent of the latter district, and in such case the State Superintendent of Public Instruction in apportioning the Public School Income Fund shall cause to be withheld from the county of such pupil's residence, a sufficient sum to pay the tui-

tion fees required by the district of his attendance, provided the State Superintendent of Public Instruction is duly notified of the amount of said tuition fees and considers the same a reasonable charge.

"Section 2. The State Superintendent of Public Instruction shall so arrange the apportionment of said Public School Income Fund that the amount of said tuition fees shall be additional to the normal apportionment to the county of the district attended by such pupil, and so distinguished in remitting the same to the treasurer of such county, and deducted from the normal apportionment to the county of said pupil's residence. When the amount of said additional apportionment is received by the treasurer of the county of said pupil's attendance it shall be placed to the credit of the High School Fund of the high school so attended, without the necessity of apportionment by the County Superintendent of Schools. The treasurer of the county of said pupil's residence shall be notified of the amount so deducted and withheld in apportioning the Public School Income Fund to such county and shall make good said deficiency by transferring from the High School Fund of the high school district of such pupil's residence, or if not a resident of a high school district, then from the funds of the school district of his residence, a like amount which shall be added to the apportionment of the Public School Income received from the State Auditor, and credited accordingly.

"Section 3. If any part of this act shall be held to be a violation of the Constitution of this state or of the United States, or invalid for any reason, no other part hereof shall be in anywise affected thereby; the General Assembly hereby declares that it would have enacted all other parts hereof even though any part should be declared unconstitutional or invalid."

Our Constitution provides:

"The public school fund of the state shall forever remain inviolate and intact; the interest thereon, only, shall be expended in the maintenance of the schools of the

state, and shall be distributed amongst the several counties and school districts of the state, in such manner as may be prescribed by law. No part of this fund, principal or interest, shall ever be transferred to any other fund, or used or appropriated, except as herein provided. The state treasurer shall be the custodian of this fund, and the same shall be securely and profitably invested as may be by law directed. The state shall supply all losses thereof that may in any manner occur." Art. 9, §3.

"Each county treasurer shall collect all school funds belonging to his county, and the several school districts therein, and disburse the same to the proper districts upon warrants drawn by the county superintendent, or by the proper district authorities, as may be provided by law." Art. 9, §4.

"The general assembly shall, by law, provide for organization of school districts of convenient size, in each of which shall be established a board of education, to consist of three or more directors to be elected by the qualified electors of the district. Said directors shall have control of instruction in the public schools of their respective districts." Art. 9, §15.

Pursuant to this last constitutional provision and under section 8280, C. L. of 1921, the state superintendent of public instruction apportions the public school income fund among the several counties of the state in proportion to the school population as shown by the report of each county and under sections 8281, 8282 and 8283, the county superintendent of schools apportions the portion of the fund received by the county according to the number of persons of school age as shown by the census lists and reports of the several school districts.

The public school fund of the state and the interest derived therefrom is state property. Such interest pursuant to article 9, section 3 of. the Constitution, quoted above, must be apportioned and distributed amongst the several counties and school districts in this state in such manner as may be prescribed by law and not

in conflict with any constitutional provision. Upon the distribution thereof, title thereto vests in the distributees.

By article 9, section 4, of the Constitution each county treasurer is required to collect all school funds belonging to his county and the several school districts therein. Under this section it is the duty of the county treasurer to collect his county's alloted share of the public school income fund. The act in question does not violate said section because it does not prohibit each county treasurer from making such collection.

It is urged that the act is unconstitutional because it violates article 9, section 15, of the Constitution in that it deprives high school directors of "control of instruction in the public schools of their respective districts" and that *Hotchkiss v. School District,* 85 Colo. 67, 273 Pac. 652, and *School Dist. v. High School Dist.,* 60 Colo. 292, 152 Pac. 1149, are decisive. In the former case we held that chapter 156, Session Laws of 1927, providing that the high school tuition of a nonresident pupil should be paid by the district of her residence irrespective of the wishes of the latter, was unconstitutional. The cases of *School District v. High School District, supra,* involving the constitutionality of a similar statute of 1909, and *Belier v. Wilson,* 59 Colo. 96, 147 Pac. 355, were approved. Mr. Justice Campbell stated at page 69: "We are unable to distinguish between the doctrine applicable here and that enunciated in our former opinions and the construction therein given to statutes which purport to confer upon one school district the power to control or utilize the funds of the other. With the wisdom of the statute now under consideration we are not concerned. Our inquiry is only as to its constitutionality. The 1927 act by its very terms purports to give the right and privilege to a pupil, who resides in a high school district of one county, of attending as a pupil in a high school district of another county, and to compel the district of her residence to pay the tuition fee required by the district

of her attendance irrespective of the wishes of her residence district and even though it may be, as here, opposed to such attendance.''

In *School Dist. v. High School Dist., supra,* we held that chapter 202 of the acts of 1909 providing for the admission of a child of one district to the high school of another at the cost of the first, was unconstitutional because violative of article 9, section 15. Therein it is stated at page 293: ''Here is a constitutional mandate that instruction in the public schools of every school district shall be under the control of the directors thereof. Nevertheless, the general assembly, by this attempted legislation, seeks to divest the directors of districts, wherein there is no high school, of control of instruction therein, beyond a certain attainment, and invest such control in the pupils residing therein or in the board of directors of an adjoining district. The legislature, in providing for the education of the pupils of a given district in the schools of another district, and imposing the cost thereof upon the former, clearly interfered with the control of instruction in such district. No discretion is left in the board of directors of the district wherein there is no high school as to the character of high school instruction the pupils thereof shall receive at the cost of the district.''

In *Belier v. Wilson,* 59 Colo. 96, 147 Pac. 355, we decided that chapter 170, section 16, Laws of 1909, authorizing the levy upon all the properties within the county of a tax for the support of a high school organized in the school district, including the county seat was opposed to article IX, section 15, and therefore unconstitutional. Therein at page 98, Mr. Justice Gabbert stated: ''The authority for levying the tax upon the property of plaintiff in error in district 9, is based upon the provisions of section 16, above quoted, which authorizes the county commissioners to levy a tax upon property in district 9, for the support of a school in district 11, without giving the electors of the former district any voice in the selec-

tion of those who manage and control the school at La Junta. This violates, both in letter and in spirit, article IX, section 15, of our state constitution.''

 Under the issues here joined, no attempt is made to compel the district of the pupil's residence to pay the cost of public instruction furnished by another district. Because of the provision of section 3 of the questioned act, it becomes our duty to determine the constitutionality of only so much thereof as properly comes within the issues here joined. That portion of section 2 which provides: ''The treasurer of the county of said pupil's residence shall be notified of the amount so deducted and withheld in apportioning the Public School Income Fund to such county and shall make good said deficiency by transferring from the High School Fund of the high school district of such pupil's residence, or if not a resident of a high school district, then from the funds of the school district of his residence, a like amount which shall be added to the apportionment of the Public School Income received from the State Auditor, and credited accordingly,'' is not within the issues and its constitutionality is neither considered nor determined. The treasurer of Adams county is not a party to this suit.

This action only involves the apportionment of the public school fund by the superintendent of public instruction and does not concern the apportionment, distribution or expenditure of county or school funds raised by taxation. The act of apportionment sought to be prohibited in this action merely allocates to the public high school district providing education to a nonresident pupil a sum to reimburse it for the reasonable cost thereof. For these reasons the cases relied upon by relator as controlling are not applicable.

 The income from the public school fund is owned by the state and is distributed as a gratuity to the various counties and school districts to supplement local taxation for school purposes, thereby decreasing the school tax burden of the residents thereof. The fact that the

legislature adopted a method of apportioning said income fund to the various counties and school districts based upon the registration of the school population thereof does not deprive the legislature of thereafter, as here, changing uniformly the method of such apportionment. The Constitution prescribes no limitation upon the method to be adopted by the legislature for the apportionment of such fund, having provided merely that it shall be distributed "in such manner as shall be prescribed by law." If the prescription adopted by the legislature is not unreasonable, not discriminatory and not in contravention of constitutional mandates, it cannot be assailed.

█ Counsel for relators have not brought to our attention any constitutional provision which has been violated by the method of apportionment provided for in the questioned act. It is eminently fair that a school district furnishing the education should be compensated therefor out of the school income fund rather than to bestow all or a portion of such gratuity upon a county or school district not furnishing and not required to pay for such instruction.

█ Accordingly we hold that those portions of the act involved in this suit, namely, section 1 and all that part of section 2 not herein expressly excluded, are constitutional. This being so, the court erred in sustaining relators' demurrer to respondent's answer and in ordering the alternative writ of mandamus made permanent.

The judgment is reversed and the cause remanded for further proceedings in harmony herewith.