## No. 13,902.

WILMORE *v.* ANNEAR, AUDITOR ET AL.

(65 P. [2d] 1433)

Decided March 1, 1937.

Mr. ELIOT N. FREEMAN, Mr. EDWARD T. FISKE, Mr. CARL A. WYERS, for plaintiff in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. BYRON G. ROGERS, Attorney General, Mr. CHARLES ROACH, First Assistant, Mr. PIERPONT FULLER, JR., Assistant, for defendants in error.

Mr. W. W. GRANT, amicus curiae.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE parties appear here in the same order as in the district court and reference will be made to them as plaintiff and defendants.

Plaintiff as a taxpayer, for himself and all others similarly situated, sought to enjoin the defendants, as state auditor and treasurer respectively, from issuing and paying warrants disbursing to the various school districts of the state on the basis of daily average attendance per capita certain moneys appropriated for that purpose from the general funds of the state under authority of chapter 76, Session Laws of 1935. Defendants demurred generally. The demurrer was sustained, and plaintiff electing to stand on his complaint, judgment of dismissal and for costs was entered. The case is before us on writ of error.

The act, so far as here material, is as follows: "Section 1. There is appropriated the sum of Five Hundred Dollars ($500.00) from the general funds of the State, not otherwise appropriated, for the support of the Public Schools of the State. Said sum shall be apportioned to the school districts of the State in proportion to the pupils in average daily attendance for the school year ending June 30, 1935."

The only question involved is the power of the general assembly so to appropriate moneys from the general revenues of the state. The plaintiff denies such right because, he says, it is inhibited by section 7 of

article X and section 15 of article IX of the state Constitution. These are as follows: ''Section 7. Municipal Taxation. The general assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may by law, vest in the corporate authorities thereof respectively, the power to assess and collect taxes for all purposes of such corporation.''

''Sec. 15. School districts—Board of Education. The general assembly shall, by law, provide for organization of school districts of convenient size, in each of which shall be established a board of education, to consist of three or more directors to be elected by the qualified electors of the district. Said directors shall have control of instruction in the public schools of their respective districts.''

We may assume, since both plaintiff and defendants concede, and we think properly, that neither the power to appropriate for the purpose set forth in the act nor the power to tax for that purpose can exist alone. The power to do either implies the power to do the other; the lack of power to do either implies a lack of power to do the other.

In distinguishing the many cases from other jurisdictions cited by defendants in their answer brief in support of the proposition that the financial maintenance of public schools is a state purpose, plaintiff contends that there is no analogy in the action of other states because such states fall into two direct constitutional categories, viz.: ''a. Those in which there is a direct constitutional warrant for legislative appropriations; and, b, Those in which the entire matter is, by the constitution, left to the legislature. In such cases the legislative fiat is final.'' We think that our Constitution does not prohibit such appropriations.

Section 1 of article IV of the Constitution provides that the executive department of the state shall consist of the governor and certain other enumerated officers

including the superintendent of public instruction. Section 32, article V, is as follows: "The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments of the state, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject." If the latter section is adequate to authorize an appropriation for the ordinary expenses of the entire legislative and the judicial departments it would seem equally adequate to authorize an appropriation for the support of the entire executive department, which includes as one of its constituent parts the superintendent of public instruction. We might well assume that the words "and for public schools" have some meaning other than merely to emphasize the fact that the department of public instruction is what section 1 specifically declares it to be, namely, a part of the executive department of the state. Confronted with this situation a brief filed by an amicus curiae in support of plaintiff's contention, contains the following: "The construction provided by custom and legislation is that the expression 'and for public schools' means the department of Public Instruction, which has always been provided for in this manner. No other or different appropriation pertaining to public schools has ever at any time appeared in the general appropriation bill. That bill, of course, has always contained appropriations for State educational institutions. These are provided for by Article VIII of the Constitution, which, according to section 1 thereof, are 'established and supported by the State in such manner as may be prescribed by law.'" It will be observed that section 1, article VIII of the Constitution uses the term "educational * * * institutions" in referring to schools other than the constitutionally required public schools.

In the sentence structure of section 32, "for public schools" is a prepositional phrase joined by the correlative conjunction "and" to other similar phrases that

set forth various independent purposes for which appropriations may be made. We think this clearly is a constitutional recognition of power in the general assembly to make an appropriation for the public schools of the state. "Public Schools" is the term used in sections 2 and 15 of article IX and as so used, from the subject matter of the sections, clearly applies there to schools that serve only those between the ages of 6 and 21 residing in the district. "In construing the meaning of a particular word, resort may be had to other sections of the same instrument for the sense in which the word is used, since a word repeatedly used in a constitution will generally be given the same meaning throughout the instrument, whether such meaning is technical or popular in its character." 6 R. C. L. p. 48.

That such an appropriation never before has been made nor appeared as a part of the general appropriation bill for public schools does not tend to prove or disprove the existence of the power to make or include such as a part of the general appropriation bill. If constitutional power to do an act is nonexistent it cannot be acquired by legislative assertion or attempted exercise of such power; if it is existent it is not lost by a failure, for however long a time, to exercise it.

But plaintiff contends that the existence of the power is negatived by section 7 of article X of the Constitution, because a school district is a municipal corporation, a quasi-municipal corporation or a part of the county government, citing *People ex rel. v. Commissioners,* 12 Colo. 89, 10 Pac. 892; *School District v. Pomponi,* 79 Colo. 658, 247 Pac. 1056. What it is, is immaterial. The issue involved is whether the financial maintenance of the public schools of the state is or is not a state purpose. If it is a state purpose it is immaterial that subordinate agencies of the government also may contribute to it.

The statutory definition of public schools is found in section 8495, C. L. 1921, and has remained unchanged since passed by the territorial assembly and approved

February 11, 1876. It is as follows: "A public school is hereby defined to be a school that derives its support entirely, or in part, from moneys raised by a general state, county or district tax." This differs in no essential respect from the language of section 22, p. 157, Territorial Laws of Colorado, 1861, which is as follows: "Each school district formed and organized under the provisions of this act, is hereby declared to be a body corporate, by the name and style of School District No..., in the county of..........., and Territory of Colorado; and in that name it may hold property and be a party to suits and contracts."

The statutory definition of public schools is sufficiently broad to cover and unquestionably does cover schools not required to be established by the Constitution, as for example, the School of Mines, the establishment of which by the territorial legislature antedates the Constitution, and a state normal school, at Greeley, which was established in 1889 by the general assembly subsequent to the adoption of the Constitution. These schools always have been supported by appropriations by the general assembly. If such schools of higher learning may be established and supported by the state; if kindergartens for pupils under the age of six may be established by the general assembly, as this court held they might be, *In Re Kindergarten Schools,* 18 Colo. 234, 32 Pac. 422, and if established, a fortiori, may be maintained by the power that creates them, then it would be a narrow construction of the Constitution to hold that public schools of the character which that document declares *shall be established and maintained,* can not enjoy the same support as schools the establishment and maintenance of which is optional with the general assembly under the Constitution. In view of the broad and liberal policy of the state, dating back to territorial days, with respect to the fostering and development of its public school system, we think that a mere statute, such as section 8322, C. L. 1921, providing that a school district shall be a body cor-

porate and may hold property and be a party to suits and contracts, *the same as a municipal corporation,* and a decision of this court (School District v. Pomponi, supra)—distinguishable on the facts and principles involved from the case before us—in which it was said that a school district "is a quasi municipal corporation, being a subordinate division of the county government which has control of the public schools and school property," do not support the contention that the financial maintenance of the public school is a local or municipal matter.

The case last cited involved the validity of a contract, and the governmental status of the district was involved only to the extent of determining that one who contracts with it is charged with knowledge of its statutory powers as is one contracting with a municipal corporation. In so holding the writer of the opinion added the caution that a "school district is not strictly a municipal corporation." This case cannot be said to be in any respect an authority for the proposition that the financial maintenance of the public schools is not a state function.

In *People ex rel. v. Commissioners, supra,* the district board had certified to the board of county commissioners that it was necessary to make a levy of 14 mills for the schools of the district. The commissioners refused to make the levy. The court held that in making a levy, the need of which had been so certified, the commissioners acted merely in a ministerial capacity and that the levy was in fact made by the district board. The fact that the ministerial act was required by statute to be performed by the county commissioners was held not to violate section 7 of article X of the Constitution as vesting in the latter, rather than in the district, the power to make the levy, for the reason that the levy was to all intents and purposes made by the district board and not by the county commissioners. This case does not hold that the authority to make a levy for schools *must* be vested in the district. It merely points out that under the statutes, properly construed, the sole power is vested

in the district and that being so vested it does not contravene section 7, supra, which authorizes vesting it in the corporate authorities. This would be true whether it is or is not required to be so vested. In brief this case turned on the fact of where power was vested under statutes there construed, rather than on the power to vest it in the commissioners under the Constitution.

It is contended by plaintiff that "each district is responsible for its own individual expense and no other can be forced to contribute to it." On this point four cases are cited: *Belier v. Wilson,* 59 Colo. 96, *School District v. Union High School,* 60 Colo. 292, *Hotchkiss v. School District,* 85 Colo. 67; *Craig v. People ex rel.,* 89 Colo. 139. The first of these cases, *Belier v. Wilson,* holds that all the property in the county could not be assessed by the county commissioners to support a high school organized in a particular school district which included the county seat. The court further held that to do so would deprive the board in another district, in which the taxpayer who complained of his assessment resided, of its constitutional right to have control of instruction in the public schools of its district, since it had no voice in the selection of those who managed and controlled the school in the other district.

In *School District v. Union High School, supra,* it was held that a statute, requiring that any pupil outside a high school district who desires to attend a high school within the county should be entitled to have his tuition at such high school paid by the district in which he resided, was unconstitutional. Under the rule of *Belier v. Wilson, supra,* the court rightly held such statute in contravention of the constitutional right of the board of the district in which the pupil resided to control instruction in the public schools of the district.

To the same effect on similar facts is *Hotchkiss v. High School District,* 85 Colo. 67, 273 Pac. 652.

In the last two mentioned cases the effect of the statutes held unconstitutional was to permit the pupil at his

114

option, rather than the district board, to determine and control the public school instruction that he should receive as a resident of such district. This, of course, deprived the board of a constitutional power expressly granted to it.

*Craig v. People ex rel.*, 89 Colo. 139, 299 Pac. 1064, holds that it is within the power of the general assembly, to provide by law for payment of the tuition of pupils attending school outside the district of their residence and to deduct it from the portion of the public school fund which otherwise would be apportioned to such district. Section 3, article IX of the Constitution expressly vests in the general assembly power to distribute the fund "in such manner as may be prescribed by law." It is significant that this section provides that the income from such public school fund, a special fund constitutionally established, shall be applied to the "maintenance of the schools of the state"; that it "shall be securely and profitably invested as may be by law directed," and that "the state shall supply all losses thereof that *may in any manner occur.*" The state can supply such losses, if any, only from its revenues. In so doing it would, if plaintiff's contentions are correct, be levying taxes and appropriating them for a local or municipal purpose. This is not a point controlling in this case, but it bears on the question of whether the constitutional intent was that the financial maintenance of public schools should be a state, or local or municipal matter.

It is clear, we believe, in the light of *Craig v. People, supra,* that in so far as the public school fund is concerned the maintenance of public schools is a state rather than a local function. The other three cases, *Belier v. Wilson, School District v. Union High School* and *Hotchkiss v. High School District, supra,* do not hold that in so far as the general revenues of the state are concerned the support of public schools is other than a state purpose. These cases involved questions arising out of an attempt to raise revenue in a certain district and use it

for the support of a school over whose instruction the board had no control, namely, the maintenance of a school with a course of instruction within the constitutional control of the board of that district, and use it for a particular pupil of that district, to procure in another school at his option instruction over which the board of his district had no control. These cases do not intimate that it would be beyond the power of the general assembly to grant such option if it did not require a nullification of the constitutional right of the board of directors to control the instruction in the schools of their respective districts.

We hold that the establishment and financial maintenance of the public schools of the state is the carrying out of a state, and not a local or municipal purpose. The legislative department had the constitutional power to make the appropriation by the act here in question. Being for a state purpose the imposition of taxes or the appropriation of moneys in the treasury, the proceeds from taxes imposed, is not unconstitutional under section 7, article X of the Constitution. By vesting the power in districts to levy and collect taxes for the support of the school or schools in such districts, the state was but adopting a means for carrying out its purposes. True, in so far as the organization of districts was concerned, the procedure was mandatory—section 15, article IX of the Constitution—and there are certain restrictions heretofore discussed that the general assembly may not impose on districts or their boards, but the act under consideration does not violate any of these restrictions. That the state has asserted its right to provide for the maintenance of public schools is further evidenced by the fact that we now have a statute directing county commissioners to levy a tax on all taxable property in the county sufficient to raise the amount of money certified by the county superintendent to be necessary for payment of minimum salaries, not exceeding five mills on the dollar. C. L. '21, §8448. Said monies are apportioned to

various districts as provided in §8449, C. L. 1921. We have had statutes of similar purport since the adoption of the Constitution, and even antedating it, for section 1, article III, c. 77, p. 576, Revised Statutes of Colorado, 1868, required county commissioners to levy a minimum tax of 5 mills for the support of schools within the counties, and section 3, article II, p. 575, provided that "on the first Monday in April, annually, he [the county superintendent] shall apportion the county school-tax, and all money in his hands appropriated for the support of the schools, among the several school districts of his county, in proportion to the number of persons reported to him by the respective district secretaries, and shall record a statement thereof in his office."

Judgment affirmed.

MR. JUSTICE HOLLAND dissents.

MR. JUSTICE KNOUS not participating.