## No. 18,498.

BOARD OF EDUCATION OF THE STATE OF COLORADO *v.*
E. T. SPURLIN, CONTROLLER OF THE STATE OF COLORADO.

(349 P. [2d] 357)

Decided February 8, 1960.   Rehearing denied February 29, 1960.

.

Mr. PETER H. HOLME, JR., Mr. KEITH ANDERSON, Mr. RICHARD G. WOHLGENANT, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mrs. PATRICIA H. MALOY, Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THE action here under review was instituted by the Board of Education and several officials thereof against James A. Noonan, the then Controller of the State of Colorado, and the State Civil Service Commission seeking a declaratory judgment with respect to whether the named plaintiffs-officials are exempt from Civil Service. Judgment was for defendants and plaintiffs seek review, contending that the trial court erred in interpreting the relevant statutory and constitutional provisions.

In 1918 Colorado adopted an amendment to Article XII of the Constitution which established the Civil Service System. The particular provision here in question occurs within Section 13 and the clause in question is that which exempts officers and teachers. We shall quote the entire exemption paragraph so that the questionable words can be seen in context. It reads:

"The classified civil service of the state shall comprise all appointive public officers and employees and the places which they hold, except the following: Judges of courts of record and one stenographer of each judge, one clerk for each court of record, persons appointed to perform judicial functions, receivers, jurors, members of boards or commissions appointed by the governor and serving without pay, members of the state industrial commission, of the public utilities commission, and the governor's private secretary and three confidential employees of his office, appointees to fill vacancies in elective offices, one deputy of each elective officer, the position involving the duties incident at present to the position of that deputy of the secretary of state, known as deputy commissioner of labor and the incumbent thereof, *officers and teachers in educational institutions not reformatory or charitable in character,* all attorneys at law serving as such, and the officers and employees of the general assembly." (Emphasis supplied.)

Originally the supervision of the public schools of Colorado was vested in a Board of Education consisting of the Superintendent of Public Instruction, the Secretary of State and the Attorney General. The Superintendent of Public Instruction was an elected official whose duties were specifically prescribed by statute.

In 1948 a constitutional amendment was adopted which provided for a Board of Education composed of elected officials from the various congressional districts. Article IX, Section 1 of the Constitution provides in pertinent part that:

" * * * From and after the general election of 1948,

the office of superintendent of public instruction shall be known as the office of commissioner of education, and from and after the expiration of the two-year term of that office next following said general election, such commissioner shall be appointed by said board of education and shall not be included in the classified civil service of the state.

"The qualifications, tenure, compensation, powers, and duties of said commissioner shall be as prescribed by law, subject to the supervision of said board."

Following the adoption of the above amendment the Legislature, in 1949, enacted Article 1, Chapter 123 Colorado Revised Statutes. The specific provision here claimed by defendants to be invalid is C.R.S. 1953, 123-1-3 (2):

" (2) For the purpose of this article, all positions within the department as shall be classified by the state board of education as assistant commissioners, supervisors or instructors, together with such other positions wherein the duties thereof are primarily those of instructing or teaching, are hereby declared, as a matter of legislative determination, to be educational in nature, and, not under the classified civil service of the state."

Following the adoption of the Department of Education Act, the relevant part of which is quoted above, and the election of the first members of the Board of Education, the department was organized into divisions for the purpose of discharging the responsibilities of the department. The offices of the individual plaintiffs were classified as "officers and teachers" and professional educators were employed under contract to fill the several positions.

Involved in this proceeding are the positions of Director of the Division of Teacher Certification, Director of School Plant and Transportation, Director of the Division of Internal Management of the Department of Education, Director of the Division of School Finances, Consultant in School Finance and School Budgets, Director

of the Division of School District Organization, Director of the Division of School Lunch Services and State Consultant for Federal Grants. These positions are all administrative in nature and require the exercise of judgment and discretion. Moreover, the individual division heads are required to conduct education programs throughout the state. They hold workshops and conferences in which instruction is given to teachers and administrators in local areas. In addition, all of them are engaged in research and planning with a view to organizing, improving and coordinating the educational system in the state. Each of the plaintiffs is formally trained as an educator and has had extensive experience in his particular field.

In the employment contracts entered into between the Board of Education and the several plaintiffs the salary scales are based upon a professional salary standard adopted by the Board of Education. The contracts were submitted to the Controller who refused to pay the salaries without first obtaining approval from the Civil Service Commission. At the present time the plaintiffs are being paid on a temporary basis pending a determination of whether the Civil Service or Board of Education classifications are applicable.

The trial court held the quoted statute, 123-1-3 (2), supra, to be unconstitutional in contravention of Article XII, Section 13 of the Colorado Constitution in that the Legislature was powerless to classify the plaintiff's employees or officers as being excepted from the Civil Service System. The court concluded that plaintiffs do not fall within the exemption of officers and teachers in educational institutions because the Department of Education is not an educational institution as set forth in the constitution. The Court ruled that this term means:

"As I say, I think the implication and import and meaning of the constitution is that those who are exempted and intended to be exempted from civil service classification are teachers or officers in an educational

institution as that term is used in the ordinary sense and for ordinary purposes, and that means a school. It means an institution with a schedule for the instruction of the students and pupils regularly enrolled in certain specified, described educational courses — educational in the sense in which we usually employ and use the word 'education.' "

The court rejected the contention of the plaintiffs that the Civil Service Commission was arbitrary and capricious in classifying the individual plaintiffs as employees subject to Civil Service while at the same time ruling that other employees were exempt. The plaintiffs contend that the trial court's conclusions were erroneous and argue:

1. That the Department of Education is an educational institution within the meaning of Article XII, Section 13 of the constitution; that the trial court gave to this term a narrow interpretation which is contrary to decisions of this Court — that "educational institution" is not limited to a particular organization within the walls of which teaching is conducted, but includes an agency which administers the educational system of the state.

2. That the trial court erred in holding unconstitutional that portion of the Educational Act of 1949 in which the Legislature designated positions similar to those of plaintiffs as educational in nature and authorized the Board of Education to carry out and implement this designation. It is said that the trial court failed to extend to the statute the usual presumption of constitutionality which normally attends a judicial construction and interpretation of a statute.

3. That the plaintiffs herein are officers and teachers within the meaning of the Civil Service exemption of the constitution (Article XII, Section 13). They argue that the plaintiffs are officers because of the importance of their positions and because of the fact that their duties are defined by statutes and regulations. It is said that

they are teachers because they are engaged in educational efforts in that they are required to improve and develop educational practices and procedures.

4. That since the plaintiffs are within the constitutional exemption, the Commission's attempted classification which denied exemption to the plaintiffs was arbitrary and invalid.

The position of defendants is essentially that adopted by the trial judge. They maintain that the term "educational institutions" should be restricted to those establishments in which organized instruction is regularly given. They also rely on Article VIII of the constitution which deals with the subject of state institutions and on Article IX, Section 1, the 1948 constitutional amendment creating the office of Commissioner of Education and abolishing the office of Superintendent of Public Instruction and providing that the Commissioner of Education shall be appointed by the Board of Education and "shall not be included in the classified civil service of the state." They argue that specific exemption of this office from the civil service implies an inclusion of the plaintiffs within the classified service.

The trial court was correct in treating the issue as one of law involving interpretation of the constitutional exemption in the light of the undisputed facts. Also correct was the court's ruling that C.R.S. 1953, 123-1-3 (2) cannot add to the rights which are created under Article XII, Section 13 of the constitution since this latter provision is self executing. The court's determination that the intent of the adopters at the time of its adoption governs was also proper. Yet it is not to be supposed that persons voting on the amendment expected the term to remain static and apply only to institutions then in existence.

Article IX, Section 1 of the constitution which creates the Department of Education, as we now know it, was not adopted until 1948; thus when the Civil Service Amendment was adopted this department was not speci-

fically contemplated. This fact does not mean, however, that the educational department cannot be considered an educational institution assuming it is within the definition as ordinarily understood.

Plaintiffs rely in part on the dictionary definitions of the term "institution" and argue that these indicate that the term embraces a state agency engaged in administering and supervising the school system.

The Oxford English Dictionary, Volume 5, page 354, 1933 edition, defines it as:

"An establishment, organization, or association, instituted for the promotion of some object, esp. one of public or general utility, religious, charitable, educational, etc."

Webster's New International Dictionary, Second Edition, 1956, defines the word as follows:

"An established society or corporation; an establishment, esp. one of a public character; a foundation; as, a literary or charitable *institution;* the Smithsonian *Institution;* also a building or the buildings occupied or used by such organization."

And Black's Law Dictionary, Fourth Edition, 1951, at page 940, defines it as:

"An establishment, specially one of public character or one affecting a community . . . An establishment or organized society or corporation."

Plaintiffs also call attention to decisions which broadly construe the term "institution" or "educational institution." They cite *Johnson v. McDonald,* 97 Colo. 324, 49 P. (2d) 1017 and *Mitchell v. Commissioners,* 112 Colo. 582, 584, 152 P. (2d) 601, which hold that the State Highway Commission is a state institution within the meaning of Section 1, Article XII of the constitution. *McColl v. Dallas County,* 220 Iowa 434, 262 N.W. 824 with an exemption from taxes and holds that a county school system is an educational institution within the meaning of that term. *Howard v. Independent School District No. 1,* 17 Ida. 537, 106 Pac. 692, recognizes a school district to be an educational corporation. *State ex rel Blakeslee v.*

*Clausen,* 85 Wash. 260, 148 Pac. 28, holds that departments of highways, fisheries and agriculture are "public institutions." The Court in the *Clausen* case declared that a public institution includes not alone those institutions having a public character but also "all branches and departments created by law and exercising any activity or function defined by the Legislature and existing at the time the amendment was adopted." To the same effect is *Michigan Good Roads Federation v. State Board of Canvassers,* 333 Mich. 352, 53 N.W. (2d) 481.

In support of their thesis that the term "educational institution" means a school and does not embrace a government department, the Attorney General argues that the statute in question is invalid in that it seeks to implement a self-executing provision and to expand its meaning. *People v. Bradley, et al.,* 66 Colo. 186, 179 Pac. 871 and *Vivian v. Bloom,* 115 Colo. 579, 177 P. (2d) 541. Defendants rely also on *Wilmore v. Annear,* 100 Colo. 106, 65 P. (2d) 1433 where the Court said in passing that the term "educational institution" does not refer to the public school system of the state, and *People v. Stanley,* 81 Colo. 276, 255 Pac. 610 which declared that "an educational institution of the state means one of the so-called state institutions; e.g., University of Colorado, School of Mines and State Teachers College."

Defendants also emphasize that the words in question must be construed in accordance with the intent of the framers and adopters of the amendment, and maintain that the voters had actual schools in mind, *Cooper Motors v. Commissioners,* 131 Colo. 78, 279 P. (2d) 685 and *In re Senate Resolution No. 2,* 94 Colo. 101, 31 P. (2d) 325.

The above definitions and judicial comments show that the phrase "educational institution" is subject to both narrow and broad interpretation and that its particular meaning depends not alone on definitions but also on the history of the amendment as a whole, includ-

ing the intent of the framers; the context in which it appears, together with the applicable facts.

■ There was a Civil Service statute prior to 1918, the year that Article XII, Section 13 was adopted. The General Assembly enacted one of the first state Civil Service Laws in the year 1907 (Session Laws 1907, p. 265). Provision was made in that statute for exemptions of the same general character as those which are contained in the constitutional amendment. The wording of the 1907 exemption clause applicable to officers in educational institutions there provided "officers and *employees* in educational institutions not reformatory or charitable in character." Presence of this exemption in the 1907 law and continued recognition of it in the 1918 constitutional amendment would indicate that the spoils system which civil service reform measures had intended to overcome had not invaded the educational area of government. Moreover, merit and tenure systems had been and continue to be developed in the educational field independently of civil service laws. The authorities indicate that this category of employment has been generally exempted from the operation of civil service laws. See *Kaplan, The Law of Civil Service,* 78, Sec. 17, *Scope of Civil Service Laws.* See also 10 *Am. Jur.* 934, Sec. 13, *Civil Service,* which reads:

"The scope of civil service laws is generally limited so as to exclude from their operation certain classes of public officers and employees. Among those who are expressly exempted under various laws are judicial officers, officers elected by the people or by the city council, or whose appointments are subject to confirmation by the city council, heads of department, the *superintendent and teachers of schools* and members of any board of education, and 'professional experts.' " (Emphasis supplied.)

Our previous interpretation of Article XII, Section 13 have been less technical and rigid than the approach here urged by the Attorney General. The tendency has

been to construe the exemptions as setting up *classes* of employees. Thus in *People v. Field,* 66 Colo. 367, 181 Pac. 526, it was held that a member of the Board of Land Commissioners of Colorado was exempt from civil service even though not specifically listed in the exempted paragraph of Article XII, Section 13. The reasoning was that Article IX, Section 9 of the constitution deals specifically with members of the Land Board, their manner of appointment, tenure, and duties and it was not impliedly repealed by Article XII, Section 13. The Court noted that policy makers are generally held exempt from civil service and said:

" * * * Again we must take cognizance of the purpose, nature and character of civil service laws involving the merit system in government. Their scope is generally limited by statute so as to exclude from their operation certain classes of public officers and employees; such as those made by law subject to confirmation by legislative bodies, heads of departments, *professional experts,* positions of a confidential nature, and those involving the exercise of judgment and discretion in important matters, as well as judges, their clerks and confidential employees. * * *" (Emphasis supplied.)

Notwithstanding the exemption paragraph of Article XII, Section 13 is explicit as to court officers in that it exempts from the classified service "judges of courts of record and one stenographer of each judge, one clerk for each court of record," the Court has held in a series of cases that various court officers are not within the classified service. In *People v. Morley,* 67 Colo. 331, 184 Pac. 386, a court bailiff was held not to be an officer of the state but rather an officer of the court and therefore exempt from civil service. In *People v. Hersey,* 69 Colo. 492, 196 Pac. 180, the same viewpoint was adopted as to the jury commissioner of the City and County of Denver. The Court there ruled:

" * * * Concluding, as we do, that the Jury Commissioner is not a state officer, and that he is 'an officer of

the court,' it necessarily follows from our holding in People ex rel Clifford v. Morley, supra, and in People ex rel v. Higgins, supra, that he is not within the civil service laws of the state, unless both of these decisions be flatly overruled."

A later decision, *People v. Luxford*, 71 Colo. 442, 207 Pac. 477, pertained to the status of a Deputy Clerk of the County Court of the City and County of Denver. On the authority of *People v. Morley*, supra, and *People v. Hersey*, supra, the principle that court officers are excluded was recognized and applied.

◼ In the instant case the plaintiffs are shown in each instance to be trained educators. They are teachers by training and although they do not practice their profession in classrooms but are for the most part engaged in research, planning and promulgation of plans, it is impossible to draw a distinction between them and teachers whose activities are devoted directly to the classroom. To hold that classroom teachers are entitled to exemption but that administrative officers who teach and direct the teachers are not, would indeed be an anomalous holding.

◼ The wording of the civil service amendment "not reformatory or charitable in character," supports our viewpoint that it was the intention of the people in adopting Article XII, Section 13 to exclude from the classified service all educators except those who teach in institutions reformatory or charitable in character.

◼ Brief mention must be made of the final contention of the defendants that the 1948 amendment of the constitution, Article IX, Section 1, creating the office of Commissioner of Education and specifically excluding that office from the classified service operated to include in civil service all other employments and offices within the Department of Education. The inclusion or exclusion of the plaintiffs must turn upon a construction of Article XII, Section 13 and the exemptions contained therein.

Having here concluded that a reasonable interpretation of this provision requires that the plaintiffs be excluded from the classified service we are constrained to hold that adoption of Article IX, Section 1 did not change the meaning of Article XII, Section 13 either expressly or by implication. The particular provision of Article IX (creating the office of Commissioner of Education) does not serve to repeal or modify Article XII, Section 13. The object of Article IX, Section 1 upon which defendants rely was to substitute the appointive office of Commissioner of Education for the *elective* office of Superintendent of Public Instruction. It was thus necessary to redefine his status. It did not purport to and the occasion did not demand that it redefine the status of every educational officer in the state. The specific reference to the Commissioner of Education must be therefore regarded as a declaration that the exempt status of the elective "Superintendent" would continue in the appointed "Commissioner." See *People v. Field,* supra, on repeals by implication.

■ It being our conclusion that plaintiffs are entitled to recognition as professional educators even though much of their work is administrative in nature; that they are therefore "officers and teachers" within the meaning of the exemption here in question, and that the term "educational institutions not reformatory or charitable in character" is not limited to institutions which have classrooms and curricula, but includes the Department of Education of the State of Colorado, the judgment must be reversed.

It follows that the court erred in holding that C.R.S. 1953, 123-1-3 (2) is unconstitutional, hence the attempted classification of plaintiffs by the Civil Service Commission was invalid and void.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views herein expressed.

MR. JUSTICE KNAUSS, MR. JUSTICE FRANTZ and MR. JUSTICE HALL dissent.

MR. JUSTICE FRANTZ dissenting:

I agree with the decision of the trial court, and in so doing, must disagree with the majority opinion of this court. It seems to me that the trial court's determination of this case is correct beyond peradventure. Rules of construction, semantics and history are on the side of affirmance of the judgment of the trial court; they are against the opinion of this court.

In 1948 Article IX, Section 1 of the Constitution of this state was amended. As amended, it provided that "The general supervision of the *public schools* of the state shall be vested in a board of education whose powers and duties shall be as now or hereafter prescribed by law." In succeeding sentences it directed how the board shall be established, after which appears the following paragraph:

"From and after the general election of 1948, the office of superintendent of public instruction shall be known as the office of commissioner of education, and from and after the expiration of the two-year term of that office next following said general election, *such commissioner shall be appointed* by said board of education and *shall not be included in the classified civil service* of the state." (Emphasis supplied.)

It should be noted that the only appointive power vested in the board relates to the commissioner, and that the only person excluded from the classified civil service is again the commissioner, all of which makes manifest the narrow confines of the power of appointment vested in the board. Having designated the commissioner of education as the officer who shall be appointed by the board, and providing only for his appointment and his exclusion only from the classified civil service, leaves the board with no other appointive power. See *State v.*

*Tucson Gas, etc. Co.,* 15 Ariz. 294, 138 Pac. 781; *State v. Turner,* 117 Kan. 755, 233 Pac. 510; *People v. Brady,* 275 Ill. 261, 114 N.E. 25.

A recognized rule of construction is to the effect that the express mention of a person or thing as being within the terms of a constitutional provision impliedly excludes other persons or things not mentioned. *State v. Tucson Gas, etc. Co.,* supra; *In re Atchison, Topeka & Santa Fe Ry. Co.,* 37 N. Mex. 194, 20 P. (2d) 918. If the language of Article IX, Section 1 is ambiguous or uncertain, or the intent is difficult of ascertainment, this technical rule of construction may be resorted to for the meaning of the provision. However, it appears to me to contain a clear statement, and consequently leaves nothing for interpretation except to follow its manifest mandate.

"As a general thing, it is supposed that the same word is used in the same sense wherever it occurs in a constitution." 1 Cooley's Const. Lim. 135 (8th ed.). True, this is not an inflexible rule, but it has been applied to the constitutional article concerning education. *Wilmore v. Annear,* 100 Colo. 106, 65 P. (2d) 1433. The phrase "educational institutions" has in context, by constitutional indication and in decisions of this court, come to have a constitutional sense dissentient from that expressed in the majority opinion. *People v. Stanley,* 81 Colo. 276, 255 Pac. 610.

In part the civil service amendment (Article XII, Section 13, Constitution of Colorado) provides that the "classified civil service of the state shall comprise all appointive public officers and employees and the places which they hold, except the following: * * * officers and teachers in educational institutions not reformatory or charitable in character." It concludes with the direction that "This section shall be self-executing."

"Educational * * * institutions * * * shall be established and supported by the state, in such manner as may be prescribed by law." Article VIII, Section 1, Colo-

rado Constitution. "The following *educational institutions,* to-wit: the University at Boulder, the Agricultural College at Fort Collins, the School of Mines at Golden, and the Institute for the Education of Mutes, * * * at Colorado Springs, *are hereby declared to be institutions* of the state of Colorado," etc. Article VIII, Section 5. "No religious test or qualification shall ever be required of any person as a condition of admission into any public *educational institution* of the state, either as a teacher or student; and no teacher or student of any such *institution* shall ever be required to attend or participate in any religious service whatever. No sectarian tenets or doctrines shall ever be taught in the *public schools,* nor shall any distinction or classification of pupils be made on account of race or color." (Emphasis supplied.) Article IX, Section 8, Colorado Constitution.

It is proposed that "educational institutions," by virtue of the context and interplay of constitutional provisions, has a very limited meaning. Beside the several sections cited, other sections lucidly recognize distinction between "educational institutions" and "public schools." And this court gave due recognition to the distinction, and in so doing, defined terms in this wise:

"The fifth point is that it creates a religious test or qualification as a condition of admission to a public educational institution of the state, contrary to article IX, section 8.

"An 'educational institution of the state' means one of the so-called state institutions; e.g. University of Colorado, School of Mines or State Teachers' College. *People v. Higgins,* 67 Colo. 441, 443, 184 Pac. 365, is analogous. It is only the last sentence of this section that refers to public schools." *People v. Stanley,* supra.

In the consideration of portions of the Constitution concerning education, this court said in *Wilmore v. Annear,* supra:

" ' * * * That bill, of course, has always contained appropriations for State educational institutions. These are

provided for by Article VIII of the Constitution, which, according to section 1 thereof, are "established and supported by the State in such manner as may be prescribed by law.'" It will be observed that section 1, article VIII of the Constitution *uses the term 'educational * * * institutions' in referring to schools other than the constitutionally required public schools.*

"In the sentence structure of section 32, 'for public schools' is a prepositional phrase joined by the correlative conjunction 'and' to other similar phrases that set forth various independent purposes for which appropriations may be made. We think this clearly is a constitutional recognition of power in the general assembly to make an appropriation for the public schools of the state. 'Public Schools' is the term used in sections 2 and 15 of article IX and as so used, from the subject matter of the sections, clearly applies there to schools that serve only those between the ages of 6 and 21 residing in the district. 'In construing the meaning of a particular word, resort may be had to other sections of the same instrument for the sense in which the word is used, since a word repeatedly used in a constitution will generally be given the same meaning throughout the instrument, whether such meaning is technical or popular in its character.'" (Emphasis supplied.)

Let us advert again to Article IX, Section 1. Does it in any way modify the civil service amendment other than to remove the 'commissioner of education' from the classified civil service? The opening sentence establishes that it does not, for it reads, "The general supervision of the *public schools of the state* shall be vested in a board of education whose powers and duties shall be as now or hereafter prescribed by law." Public schools are involved, but public schools are not "educational institutions" of the state; and since the only exemption of the civil service amendment relates to certain "educational institutions of the state," and Article IX, Section 1 exempts only the commissioner of education, all other offi-

cers and employees created by statute pursuant to the latter constitutional provision are subject to civil service.

MR. JUSTICE KNAUSS and MR. JUSTICE HALL join in this dissent.