Mr. Robert Williams Staff Director Joint Budget Committee 341 State Capitol Denver, Colorado 80203
Dear Mr. Williams:
On behalf of the Joint Budget Committee, you have requested my opinion regarding the constitutionality of a bill fundamentally altering the present system of school financing. As I understand it, S.B. 538 embodies the following concepts:
1. each school district's budget will be approved by the general assembly;
2. the state share of the total dollars going to school financing will increase to 50 percent;
3. each school district will levy the same mill levy determined by totalling the 181 school district budgets taking 50 percent of that and dividing it by the total assessed valuation of all real and personal property in the state;
4. if by levying the standard mill levy a school district produces more revenue than its approved budget, the excess will be deposited in the state public school fund for redistribution to other school districts having a revenue deficiency; and
5. a district's budget can be increased by a vote of the electors, but such an increase will not be funded by any state aid.
This proposal is an attempt to meet the state's constitutional mandate to "provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state." Colo. Const. art. IX, § 2. It is my opinion that such a proposal, as outlined above, would not be unconstitutional.
QUESTIONS PRESENTED AND CONCLUSIONS
Two questions arise in regard to the constitutionality of the proposal:
1. Can the state assume responsibility for approving or establishing the basic budget of a school district?
My opinion is "yes."
2. Can the state establish a statewide ad valorem mill levy for school financing, with the result that in many districts, excess revenues will be redistributed by the state to districts with revenue deficiencies?
My opinion is "yes."
ANALYSIS
The first constitutional question relates to local control of instruction. Colo. Const. art. IX, § 15, reads as follows:
 The general assembly shall, by law, provide for organization of school districts of convenient size, in each of which shall be established a board of education, to consist of three or more directors to be elected by the qualified electors of the district. Said directors shall have control of instruction in the public schools of their respective districts.
(Emphasis added.)
The issue then becomes the potential conflict between state approval of the budget and the requirement for local "control of instruction." If such a conflict exists, it would not invalidate the proposal. The local boards of education would continue to establish the curricula and the priorities in all areas of the educational process. Local control is preserved by constitutional provisions such as Colo. Const. art. IX, § 16, which indicates that textbook selections are to be left to local decision-making. Further, the JBC proposal would continue to allow a district's voters the opportunity to increase the district's budget beyond the state-approved level.
The state has been, and will continue to be, intimately involved with supervising and financing education by and through local school districts. Colo. Const. art. IX, § 1, states the general supervision of the schools of the state shall be vested in a board of education. And the state now provides approximately 46 percent of the revenue spent at the local level for education.
S.B. 538 would establish a system that is not significantly different from the current one. Under the Public School Financing Act, the state establishes an upper limit for a district's budget through a limitation on the authorized revenue base of a district. If a district wants a larger budget, it must get permission from the State School District Budget Review Board. Should the request for an increased budget be denied, the district has the option of going to the electorate for authority to increase the budget increasing property taxes.
In addition to this general budgetary restriction, the state and the federal governments have imposed and required, directly or indirectly, specific education programs, such as special education, education of the handicapped, and bilingual education.
The key phrase is "control of instruction." This relates to educational policy, to spending priorities, and to curriculum control. Under the JBC proposed local control of instruction would continue as required by the Constitution.
The second broad constitutional question is whether the state can establish a statewide mill levy, with excess revenue collected in one school district being distributed to a revenue-deficient school district. This becomes an issue because the mechanics of the JBC proposal would result in a state-established mill levy, with redistribution of certain property tax revenue, leading to the argument that it is a state property tax in excess of four mills and therefore in violation of Colo. Const. art. X, § 11:
 The rate of taxation on property for state purposes shall never exceed four mills on each dollar of valuation.
It is necessary to analyze whether financing schools is a "state purpose." A school district is a political subdivision of the state. Bagby v. School District No. 1,186 Colo. 428 (1974); Newt Olson Lumber Co. v. SchoolDistrict No. 8, 83 Colo. 272 (1928).
A school district has also been held to be a quasi-municipal corporation, being a subordinate division of the county government which has control of the public schools and school property. School District v. Pomponi, 79 Colo. 658
(1926).
The resolution of the controversy as to the nature of a school district came in Wilmore v. Annear, 100 Colo. 106
(1937). In this case, the State Supreme Court upheld the power of the general assembly to appropriate general appropriation funds to the school districts, and stated that establishing and maintaining public schools is a state purpose.
 But plaintiff contends that the existence of the power is negatived by section 7 of article X of the constitution, because a school district is a municipal corporation, a quasi-municipal corporation or a part of the county government, . . . . What it is, is immaterial. The issue involved is whether the financial maintenance of the public schools is or is not a state purpose. If it is a state purpose it is immaterial that subordinate agencies of the government may also contribute to it.
 It is contended by plaintiff that "each district is responsible for its own individual expense and no one can be forced to contribute to it." On this point four cases are cited: Belier v. Wilson, 59 Colo. 96, School District v. Union High School, 60 Colo. 292, Hotchkiss v. School District, 85 Colo. 67, Craig v. People ex rel., 89 Colo. 139. (The court then explained and distinguished each of these four cases.)
 We hold that the establishment and financial maintenance of the public schools of the state is the carrying out of a state, and not a local or municipal purpose. . . . That the state has asserted its right to provide for the maintenance of public schools is further evidenced by the fact that we now have a statute directing county commissioners to lay a tax on all taxable property in the county sufficient to raise the amount of money certified by the county superintendent to be necessary for payment of minimum salaries, not exceeding five mills on the dollars. C.L. `21, section 8448. Said monies are apportioned to various districts as provided in section 8449, C.L. 1921.
(Emphasis added.)
The decision in Wilmore, supra, clarified several issues: (1) the establishment and maintenance of public schools is a state purpose; (2) the state can collect and redistribute general tax revenue for school purposes; and (3) a county can implement a statutory scheme of imposing a standard mill levy on all property in the county and redistributing the revenue to school districts therein on the basis of an apportionment formula.
The last point is significant. The court in Wilmore,supra, in carefully considered dictum, validated statutes requiring a county-wide mill levy to be imposed, with the revenue being redistributed to the school districts therein. This property tax was perceived by the court to be for a state purpose, education, but yet the property tax levy was in addition to the mill levy imposed for other state purposes. InWilmore, supra, the court did not specifically deal with Colo. Const. art. X, § 11. However, it certainly implied that although schools were a state purpose, financing them in part through a property tax in excess of four mills did not violate the constitution.
Upon cursory analysis, it would appear to be insufficient to argue that funding schools is somehow a different kind of state purpose than that intended by Colo. Const. art. X, § 11. Several early cases made it clear that state purposes mean all state purposes. People ex rel. Seeley v.May, 9 Colo. 80 (1885); People ex rel. Thomas v.Scott, 9 Colo. 422 (1886); Parsons v. People,32 Colo. 221 (1904).
Yet a closer scrutiny illuminates several distinctions, opening the way to differentiating the funding of schools from the funding of other state purposes under Colo. Const. art. X, §11.
There is no requirement that the general assembly delegate any or all of its power to finance public schools to local school districts, although that has become an important tradition in Colorado. The court in Wilmore, supra, clearly recognized this principle:
 By vesting the power in districts to levy and collect taxes for the support of the school or schools in such districts, the state was but adopting a means for carrying out its purpose.
However, there is a constitutional requirement, as discussed earlier that the local districts control instruction. The distinction can be drawn that because the state does not have the power or authority to decide how the money is spent, and because funding priorities remain at the local level, school funding is not a state purpose as contemplated by Colo. Const. art. X, §11.
Another distinction can be drawn on the basis of the JBC proposal. The revenue would be raised and kept primarily at the local level. Any money coming to the state would be earmarked for the public school fund for distribution to other districts, and it would not go through the general fund.
While these distinctions are by no means conclusive, they are important in buttressing a constitutional argument.
The question of the constitutional validity of the JBC proposal, S.B. 538, is not easily answered. It is my opinion, based onWilmore, supra, and the foregoing analysis, that the JBC proposal could be strongly defended in good faith and in good conscience.
However, because of the extreme significance of this legislation, and because the constitutional questions relate to matters exclusively publici juris, I would recommend that the Senate, as the house of origin, prior to passage, request through interrogatories an opinion of the State Supreme Court pursuant to Colo. Const. art. VI, § 3. Even though under this approach the legislation would not be "clothed with the presumption of constitutionality," it would provide an early answer should the court choose to hear the matter.
The JBC should be advised that a similar positive-aid, negative-aid school funding statute was recently declared unconstitutional in Wisconsin. Buse v. Smith, 247 N.W.2d 141
(1976). The statute was not identical to the JBC proposal, and among other differences, it did not establish a standard, statewide mill levy and it did create a disincentive for school districts to elect to enrich their program by voting for higher taxes for higher school budgets.
The Wisconsin Supreme Court determined that the statute violated their "uniformity of taxation" clause, similar to Colo. Const. art. X, § 3. However, the JBC by establishing a standard mill levy would not encounter this particular problem, and therefore the Wisconsin case can be easily distinguished.
SUMMARY
S.B. 538 (1977 Session) regarding the financing of public schools is not unconstitutional. The constitution may permit the state to assume responsibility for approving or establishing a school district's budget and the state may be able to establish a uniform ad valorem mill levy for school financing with redistribution of revenue among districts.
Very truly yours,
 J.D. MacFARLANE Attorney General
SCHOOL DISTRICTS EDUCATION
S.B. 538 (1977 Session)
Colo. Const. art. IX, § 2, 11, 15, and 16
Colo. Const. art. X, § 3
LEGISLATIVE BRANCH Joint Budget Committee EDUCATION, DEPT. OF
S.B. 538 (1977 Session) regarding the financing of public schools is not unconstitutional. The constitution may permit the state to assume responsibility for approving or establishing a school district's budget and the state may be able to establish a uniform ad valorem mill levy for school financing with redistribution of revenue among districts.