In Re: The Petition of Thomas L. MAY, Frank Vallero, John Wharrier, and the Colorado Association of Public Employees, Petitioners–Appellants,

v.

DEPARTMENT OF HUMAN SERVICES, OFFICE OF YOUTH SERVICES, Lookout Mountain Youth Services Center, and Department of Higher Education, Metropolitan State College of Denver, Respondents–Appellees,

and

State Personnel Board, Appellee.

No. 96CA1957.

Colorado Court of Appeals, Div. II.

May 14, 1998.

Rehearing Denied Aug. 13, 1998.

Certiorari Granted April 26, 1999.

Vonda G. Hall, Denver, Colorado, for Petitioners–Appellants

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Assistant Attorney General, Coleman M. Connolly, Assistant Attorney General, Denver, Colorado, for Respondents–Appellees

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Assistant Attorney General, Denver, Colorado, for Appellee

Opinion by Judge CRISWELL.

Petitioners, Colorado Association of Public Employees, a labor organization that represents state employees, and Thomas L. May, Frank Vallero, and John Wharrier, former employees at Lookout Mountain School, appeal from an order of the State Personnel Board (Board) entered in favor of respondents, Colorado Department of Human Services (Department) and Department of Higher Education, Metropolitan State College of Denver (College). The Board held that the teaching positions at Lookout Mountain School and Mount View School were exempt from the state classified personnel system. We reverse and remand with directions.

Section 19–2–403, C.R.S.1997, requires the Department to "establish and *operate* facilities necessary for the care, *education, training,* treatment, and rehabilitation of those juveniles legally committed to its custody" pursuant to the Children's Code, § 19–1–101, et seq., C.R.S.1997. (emphasis supplied) This is an obligation that is enforceable through

the contempt powers of the judiciary. *People in Interest of S.C.*, 802 P.2d 1101 (Colo. App.1989).

Both the Lookout Mountain School and the Mount View School have been established as "training school[s]" for juveniles committed to the custody of the Department. These schools were established to "provide care, *education, training,* and rehabilitation of juveniles," who are ten years of age, or older. Sections 19–2–406 and 19–2–407, C.R.S.1997 (emphasis supplied).

Traditionally, the Department, through its Office of Youth Services (OYS), fulfilled its obligation to educate and train juveniles committed to its custody through use of its own, classified employees. At the time of the events giving rise to this controversy, there were 18 teachers used at the two schools to educate and train the juveniles committed there.

In 1994, however, the director of OYS concluded that the juveniles were not receiving the desired level of education. As a consequence, OYS entered into an agreement with the College whereby the College was to administer the educational and training programs at the two schools. The purpose of this agreement, according to the director of OYS, was to enhance the educational opportunities for the juveniles at these two schools.

Under this agreement, the teachers who were to be used at these schools were to be employed by the College. The appropriations to fund the two schools, however, continued to be made to the Department, and the Department would make a payment to the College. From those funds, the College would then pay the teachers who were to be used under the agreement.

Application was made to the state personnel director to exempt from the classified system of the state the teaching positions at the schools. That official granted such a certificate of exemption. The schools' former teachers were then informed that they could no longer fill their classified positions. Rather, they were given the option either of applying for teaching positions at the schools through the College or of continuing in the classified service. Those who applied to the College for a teaching position and were accepted were to become at-will employees of the College and were to lose all tenure rights under the classified system. Those who did not apply for such positions or were not accepted were to continue to be OYS employees, but they were to be transferred to other classified positions elsewhere.

Twelve of the 18 former teachers applied for and were offered teaching positions by the College; six teachers were not offered such positions. Several of those who accepted positions with the College testified that their duties and responsibilities remained substantially the same after the change as before.

Petitioners May, Vallero, and Wharrier remained as classified employees, but they were transferred to positions at other schools. May and Vallero were transferred to positions as health facilitators in a program conducted after normal school hours. Wharrier was transferred to a position that was in charge of conducting student assessments. None of the three suffered any reduction in pay, status, or tenure.

Petitioners later filed individual grievances and a petition for declaratory relief, asking that the state personnel director's determination of exemption be declared invalid. After an evidentiary hearing, an Administrative Law Judge (ALJ) affirmed the director's grant of exemption for the teaching positions, denied the request for declaratory relief, and dismissed the individuals' grievances. The Board adopted the ALJ's findings of fact and conclusions of law.

■ Petitioners contend that the state personnel director's determination that the teaching positions at the two schools were exempt from the state classified system violated the Colorado Civil Service Amendment, Colo. Const. art. XII, § 13. We agree.

The Colorado Civil Service Amendment adopted a system for the appointment and termination of state employees, based on merit. One principal feature of that system is that state employees are to be hired and promoted "according to merit and fitness, to be ascertained by competitive tests of competence without regard to race, creed, or color,

or political affiliation." Colo. Const. art. XII, § 13(1). Another is that, once an employee becomes a part of the classified system, that employee may not be dismissed, suspended, or otherwise disciplined except for good cause, and any decision with respect to such an action is reviewable by the Board. Colo. Const. art. XII, § 13(8); *Department of Institutions v. Kinchen,* 886 P.2d 700 (Colo.1994).

Significant to the issues raised here, Colo. Const. art. XII, § 13(2), provides that *"all* appointive public officers and employees" shall be a part of the classified personnel system with certain specified exceptions, including:

> *faculty members* of educational institutions and departments *not reformatory* or charitable *in character* .... (emphasis supplied)

This exemption, or one substantially similar in nature, has existed since the date of the initial adoption of the Civil Service Amendment. It has been said that the exemption was based upon the consideration that, while state employment had previously suffered from the spoils system, independent merit and tenure systems had been developed in the educational field, so that application of the protections of the amendment to these employees was not required. *Board of Education v. Spurlin,* 141 Colo. 508, 349 P.2d 357 (1960).

Given these constitutional provisions, several considerations lead us to conclude that the attempt to convert classified positions into exempt positions here violated the Civil Service Amendment.

First, it has been held, generally, that a classified employee's rights under the constitution cannot be infringed upon by abolishing the office held by such an employee and creating a "new" position, to be filled by a non-classified employee, if the duties of both positions remain substantially the same. *Colorado Ass'n of Public Employees v. Board of Regents,* 804 P.2d 138 (Colo.1990). *See People ex rel. Kelly v. Milliken,* 74 Colo. 456, 223 P. 40 (1923). And, in such regard, it is not necessary that the new position have exactly the same responsibilities; if the position's functions are substantially the same,

the classified employee's rights have been violated. *Tising v. State Personnel Board,* 825 P.2d 1011 (Colo.App.1991).

Here, the Department attempted to "abolish" the classified teaching positions at the two schools and, simultaneously, to have the College create "new" faculty positions to perform the educational and training functions that had previously been performed by its classified employees. Yet, while the educational approach may have changed somewhat, the functions performed by both sets of employees—to educate and to train juveniles in the custody of the Department—remained the same. Indeed, two-thirds of the classified employees were selected to fill the "new" exempt positions. Consequently, although the content of the educational program and the method of instruction may have undergone some changes, the Department does not contend that the responsibilities of the two groups were substantially different.

We conclude, then, that the Department's contract with the College, to the extent that that agreement attempted to substitute non-classified employee positions for former classified positions, violated the Civil Service Amendment in essentially the same way that that constitutional provision was violated in *Colorado Ass'n of Public Employees v. Board of Regents, supra,* and *People ex rel. Kelly v. Milliken, supra.*

■ Further, the state personnel director's exemption violated the Civil Service Amendment in another way, as well. The director has no authority to "exempt" a position from the classified service, unless the constitution authorizes such an exemption. And, in interpreting the exempting language of Colo. Const. art. XII, § 13(2), we must give the words their plain, ordinary meanings. Hence, whether a particular position is properly exempted depends upon the functions assigned to it, not upon the title bestowed upon it. *See Colorado State Civil Service Employees Ass'n v. Love,* 167 Colo. 436, 448 P.2d 624 (1968).

In adopting this approach, our supreme court has observed, albeit in dictum, that the exemption for faculty members contained in Colo. Const. art. XII, § 13(2), was intended

to exempt "all educators except those *who teach* in institutions reformatory or charitable in character." *Board of Education v. Spurlin, supra,* 141 Colo. at 519, 349 P.2d at 363 (emphasis supplied).

Nevertheless, although the issue was not raised by it in the proceedings before the Board or in its written brief filed with us, the Department asserted on oral argument that neither of the two schools here should be considered an "institution" that is "reformatory in character." We disagree.

■ The statutes creating these two schools established them so that youngsters committed by the juvenile justice system would receive education and training. Hence, the schools are "reformatory in character." *See McKinnon v. Second Judicial District Court,* 35 Nev. 494, 130 P. 465 (1913) (A "reformatory" is an institution in which youthful offenders are trained and educated with a view toward their "reformation.")

■ Furthermore, even if the schools themselves were not to be characterized as "reformatory," the Department itself would, nevertheless, be such an "institution" or "department" for purposes of the Civil Service Amendment. *See Board of Education v. Spurlin, supra* (Department of Education is "educational institution" for purposes of Colo. Const. art. XII, § 13(2)).

Therefore, if those persons who teach juveniles at either of these schools are "faculty members" of those schools, the constitution requires that they remain a part of the classified system. And, we conclude that such is the case.

■ First, we reject the Department's argument that, because these positions are not referred to as instructors or teachers, but as "administrators," they are not faculty members. If, as here, the function and responsibility of the position is to teach juveniles in the custody of the Department, they are "faculty members" under the pertinent constitutional provision. . *See Colorado State Civil Service Employees Ass'n v. Love, supra* (function of department head discloses that position is not "confidential employee" of Governor under Colo. Const. art. XII, § 13(2)).

■ Further, the fact that such positions have, by agreement between the parties, been transferred from the payroll of the Department to the payroll of the College is, in our view, irrelevant.

The Department asserts that its agreement with the College was authorized by § 19–2–410, C.R.S.1997. That statute authorizes the Department to enter into agreements with either another governmental unit or agency or with a private facility or provider "to carry out the purpose" of the juvenile justice system. Such an agreement may provide "for the type of work to be performed at a camp or other facility ... and for other matters relating to the care and treatment of juveniles."

In addition, we note that § 14–2–403(2), C.R.S.1997, authorizes the Department to "cooperate with other governmental units and agencies ... to facilitate the training and rehabilitation of youth."

However, neither of these statutes authorizes the Department to transfer to other governmental agencies the ultimate responsibility for performing the statutory obligations imposed upon it. On the contrary, while the Department may contract with other agencies to fulfill those obligations, it may not delegate to other agencies the responsibility for seeing to it that those obligations are met. It is only the General Assembly that, by law duly enacted, can effectuate a transfer of the Department's functions. *See* Colo. Const. art. IV, § 22; *Bardsley v. Colorado Department of Public Safety,* 870 P.2d 641 (Colo.App.1994).

Hence, the responsibility for *operating* a facility for educating and training juveniles, imposed upon the Department by § 19–2–403, cannot be relinquished by it by the simple device of contracting with the College to provide teachers for its facility. Those teachers, whether on the payroll of the Department or of the College, continue to be "faculty members" of an institution or department that is "reformatory" in character. By constitutional mandate, therefore, those teachers are required to be members of the state's classified personnel system. Whether

they are to be considered faculty members of the College for other purposes, we need not decide.

We conclude, therefore, that, even if the responsibilities of the new employees were different from those of their classified predecessors, so long as they are used to fulfill the Department's obligation to educate and to train juveniles at the two schools that it operates, they must be considered to be "faculty members" at a "reformatory." As such, any person filling such a position must be a member of the classified service.

We conclude, therefore, that the state personnel director had no basis for granting any exemption for any of the positions that was the subject of his grant. His attempt to do so resulted in a deprivation of the constitutional rights granted to those persons who were employed as teachers at the Department's two schools at the time such exemption was granted. And, in approving such exemption, the Board erred, as a matter of law.

Of course, except to the extent that the agreement between the Department and the College affected the rights of the Department's employees in this respect, we do not suggest that that agreement is otherwise improper or unenforceable. To the extent that it was premised upon the assumption that the "new" positions would be exempt from the classified service of this state, however, that agreement is invalid.

The order of the Board is reversed, and the cause is remanded to it with directions to grant the request for declaratory relief, to uphold the grievances filed by the individual petitioners, and to grant each of the petitioners such further relief as the Board may consider to be appropriate under the circumstances.

Judge JONES and Judge TAUBMAN concur with directions.